**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DAVID JONES, | |
| Plaintiff, | |
| v. | Civil Action No. 13-CV-11196 |
| JUDYANN BIGBY, JOHN AUERBACH, LINDA HAN, JULIE NASSIF and CHARLES SALEMI, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT LINDA HAN'S MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Linda Han ("Han") respectfully requests that this Court dismiss the Complaint filed by Plaintiff David Jones in its entirety for failure to state a claim upon which relief can be granted.

In his single-count Complaint, Plaintiff seeks to hold Han liable as a supervisor for a violation of 42 U.S.C. § 1983. Plaintiff's Complaint should be dismissed because it contains no factual allegations of any act or omission by Han that led to a deprivation of Plaintiff's Constitutional rights. The Complaint, which contains only three references to Han, does not contain facts that plausibly suggest that Han knew of the unconstitutional conduct that caused the injury to Plaintiff, or that she had a legal obligation to correct it, yet failed to take action. Moreover, the allegations in the Complaint about Han's conduct confirm that she did not act with the deliberate indifference necessary to support a § 1983 claim for supervisor liability.

In addition, the Complaint should also be dismissed because Han is entitled to qualified immunity. The appropriate time for the Court to consider a claim of qualified immunity is on a

Motion to Dismiss, as the immunity referenced is not simply from liability, but from the litigation itself.

Plaintiff's Complaint should be dismissed, in its entirety, for the foregoing reasons.

## FACTS

In considering a motion to dismiss pursuant to Fed. R. 12(b)(6), the Court is required to accept as true the well-plead facts in the complaint.  Accordingly, and for purposes of Han's Motion to Dismiss only, the relevant facts alleged in Plaintiff's Complaint are as follows:

### A.   Plaintiff Is Convicted, Sentenced For Drug Offenses And His Conviction Is Overturned

Plaintiff was arrested on March 8, 2010 and charged with distribution of a Class B substance, crack cocaine, and distribution within a school zone.  Compl., ¶ 12.  The substance for which Plaintiff was charged was forwarded to and tested at the William F. Hinton drug lab (the "Lab") by Annie Dookhan, as primary chemist, and Kate Corbett in April 2010.  Id. at ¶¶ 2, 13-14.  The Complaint describes the procedures that should have been followed with respect to the testing of the substance for which he was charged.  Id. at ¶ 15.  The Complaint does ***not*** allege that there was any to follow those procedures with respect to the substance at issue in Plaintiff's criminal case.

Plaintiff makes ***no*** allegations as to the results of the tests performed on the substance for which he was criminally charged.  Nor does Plaintiff make any allegations concerning any testimony offered prior to his conviction as to the actual testing of this substance by the Lab, except to allege generally that Corbett testified.  Id. at ¶ 14.  Plaintiff alleges that he was convicted on all charges and sentenced to five years in the House of Correction.  Id. at ¶ 16.

Plaintiff was released from custody after misconduct at the Lab was discovered and after he had served two years in prison.  Id. at ¶ 18.  Plaintiff's remaining conviction was reversed in

March 2013 and he was not prosecuted further.  <u>Id.</u> at ¶19.

**B.      The Alleged Misconduct In The Lab**

1.      <u>Misconduct By Dookhan</u>

Plaintiff alleges that Dookhan intentionally contaminated samples by mixing a known narcotic into samples that had tested negative for narcotics.  <u>Id.</u> at ¶ 22.  Plaintiff also alleges that Dookhan would certify that she had analyzed a substance chemically, when she had not, and that she forged the signatures of other chemists indicating that they had analyzed a substance chemically, when they had not.  <u>Id.</u> at ¶¶ 23-24.  Dookhan is alleged to have forged the initials of the evidence officer to indicate that she had permission to remove drugs from the safe when she had not been given permission, and that she forged documents showing that she had calibrated machines when she had not.  <u>Id.</u> at ¶¶ 25-26.  Dookhan is also alleged to have falsified her resume and lied under oath about her credentials.  <u>Id.</u> at ¶ 26.

2.      <u>Practices And Procedures At The Lab</u>

Plaintiff alleges that general practices at the Lab invited error and were likely to result in constitutional violations.  <u>Id.</u> at ¶ 28.  In particular, Plaintiff complains that the evidence safe, the Lab itself and computers at the Lab containing data were not sufficiently secure and that evidence was not appropriately tracked while at the Lab.  <u>Id.</u> at ¶¶ 29-33.  Plaintiff also complains that the Lab's written policies and procedures were deficient, including that the Lab failed to implement a procedure that would track adverse events, such as when two chemists obtained different results after testing the same sample.  <u>Id.</u> at ¶¶ 37-51.

3.      <u>Awareness Of Dookhan's Conduct</u>

Plaintiff claims that unnamed "supervisors" were aware of "red flags" in Dookhan's work as early as 2008 and continuing through 2011.  <u>Id.</u> at ¶ 52.  The "red flags" included the high

volume of samples tested by Dookhan compared to the number tested by her peers.  Id. at ¶ 53.

Additional red flags were Dookhan's disorganized work area, which included several open

samples at the same time and the rate at which she had "returns" (i.e., samples that she brought

to the confirmatory chemist which were found by the confirmatory chemist to be misclassified).

Id. at ¶¶ 65, 67-68.

Plaintiff alleges that in the spring of 2011, unnamed supervisors learned that Dookhan

had forged another chemist's signature on an evidence log book, inappropriately taken samples

out of the evidence safe, and lied about it when asked.  Id. at ¶ 70.  Plaintiff later refers to this as

the "2011 breach."  Id. at ¶¶ 73-73.  Dookhan's conduct was not reported to law enforcement or

the district attorney's office for six months.  Id. at ¶ 71.  Dookhan was reassigned from testing

duties at this time, but continued to have access to the Lab and to testify as a witness.  Id.

### C.    The Allegations Against Han

Plaintiff alleges in the Complaint that Han was the director of the Lab at all relevant

times.  Id. at ¶ 10.  The Complaint does not allege that Han had any responsibility with respect to

the supervision of employees of the Lab, including Dookhan, or with respect to the procedures or

policies implemented by the Lab.

Plaintiff does not allege that Han was, or should have been, aware of any misconduct by

Dookhan prior to discovery of the 2011 breach.  The only allegations against Han are that: (1)

she "believed that the 2011 breach 'was simply a result of [Dookhan's] desire to reduce the

backlog ... There was no question concerning any other motive" and (2) that she and Julie Nassif

"failed to report this 2011 breach because they 'did not appreciate its potential legal

significance."  Id. at ¶¶ 73-74.

## ARGUMENT

### A.     Legal Standard For Motion To Dismiss

In considering whether the present Complaint can survive Han's Motion to Dismiss for failure to state a claim, the Court should employ the two-pronged approach set forth by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  This approach requires that the Court first identify and accept as true only the well-pleaded factual allegations in the Complaint. Id. at 678-79.  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and cannot provide the factual basis necessary for Plaintiff's Complaint to survive a motion to dismiss.  Id.

Once the Court has identified and accepted as true the well-pleaded factual allegations, it is charged with determining if those facts "state a claim to relief that is plausible on its face." Id. at 678, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint satisfies the plausibility standard only when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see Laurence v. Wall, 2010 U.S. Dist. LEXIS 112381, *5 (D. R.I. 2010) (dismissing complaints referencing conduct by "defendants" generally; such "sweeping allegations fail to provide adequate specificity").[1]  If the factual allegations in a complaint fail to "nudge[]" a plaintiff's claims "across the line from conceivable to plausible, the "complaint must be dismissed." Twombly, 550 U.S. at 570.  Where "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" the plaintiff has not met its burden and the

---

[1] Much of the Complaint makes allegations regarding conduct or knowledge of unspecified "supervisors" or the "defendants" collectively without more specification.  See e.g., Compl., ¶¶ 52-53, 55, 60, 65-66.  Courts routinely dismiss complaints that rely on factual allegations so generalized that they to fail to provide defendants with "'fair notice of what the plaintiff's claim is and the grounds upon which it rests'" or that fail to allege facts sufficient to allow defendants to prepare a defense against such claims.  See Laurence, 2010 U.S. Dist. LEXIS 112381, *5, quoting Conley v. Gibson, 355 U.S. 41, 47 (1947) and citing Salahuddin v. Cuomo, 861 F.2d 40, 42 (2nd Cir. 1988).

complaint should be dismissed.  Iqbal, 556 U.S. at 679.

**B.    The Complaint Fails To State A Claim For Supervisory Liability Under 42 U.S.C. § 1983**

42 U.S.C. § 1983 provides individuals with a basis to sue certain persons for depriving them of their guaranteed rights.  Here, Plaintiff alleges that he was deprived of his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution when the named Defendants:

> ... ignored the fraud perpetrated by Dookhan, developed fatally flawed policies, procedures and protocols for the Lab, failed to ensure the integrity of the drug testing process and failed to take basic precautions to ensure that the Lab was properly run.  The Defendants then illegally suppressed and withheld from the Plaintiff exculpatory information concerning the misconduct of Dookhan and the systemic failures of the Lab.  Due to the Defendants' failure to disclose this misconduct, the Plaintiff was wrongfully held in jail, convicted and imprisoned.

Compl., ¶ 79.

A claim under 42 U.S.C. § 1983 has two "essential elements".  Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (dismissing § 1983 claim for failure to state a claim).  First, the defendant must have acted under color of state law.  Id.  Second, the defendant's conduct must have deprived the plaintiff of a right secured by the Constitution or federal law.  Id.  The second element also requires the plaintiff to establish that the defendant's conduct was the "cause in fact" of the alleged deprivation.  Id.

Han cannot be held liable under 42 U.S.C. § 1983 for the unconstitutional conduct of Dookhan based solely on the allegation that Han was Dookhan's supervisor.  See Iqbal, 556 U.S. at 676 (defendant cannot be held liable for actions of subordinate on theory of *respondeat superior*); see also Rochleau v. Town of Millbury, 115 F. Supp. 2d 173,177 (D. Mass. 2000) (same).  Section 1983 requires that the Plaintiff allege conduct ***by Han*** that deprived Plaintiff of a Constitutional right.  Iqbal, 556 U.S. at 676 and 678 (plaintiff must allege facts sufficient to

support a claim that defendant violated plaintiff's constitutional rights through defendant's "own individual actions.")  As the Complaint fails to allege that Han, by her "own individual actions" engaged in conduct that deprived Plaintiff of a Constitutional right, Plaintiff's Complaint should be dismissed, in its entirety, against Han.

Plaintiff's claim against Han is based on the theory of "supervisory liability."  Under § 1983, a supervisor can only be liable for a subordinate's behavior if "(1) the behavior of [his] subordinates results in a constitutional violation, and (2) the [supervisor's] action or inaction was affirmative[ly] link[ed] to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference."  Pineda v. Toomey, 533 F. 3d. 50, 54 (1st Cir. 2008) (citations omitted).  In addition, to establish supervisory liability, Plaintiff must allege facts sufficient to support a finding that Han *either* had actual notice of the offending conduct of Dookhan, or that she would have known of the subordinate's conduct "but for [her] deliberate indifference."  Rochleau, 115 F. Supp. 2d at 181; Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 535 (1st Cir. 2011) ("actual or constructive notice of a rights violation is a prerequisite for stating any claim").

To establish deliberate indifference by a supervisor with respect to a § 1983 claim, the plaintiff must show "actual knowledge [or willful blindness] of impending harm, easily preventable."  Manarite v. City of Springfield, 957 F.2d 953, 956 (1st Cir. 1992); see also Gaudreault v. Municipality of Salem, 923 F.2d 203, 209 (1st Cir. 1990); Rochleau, 115 F. Supp. 2d at 181.  The deliberate indifference standard is strict in § 1983 cases, and means "more than ordinary negligence, and probably more than gross negligence."  Manarite, 957 F.2d 953 at 956.

As discussed below, the Complaint is devoid of any factual allegations that plausibly suggest that Han had actual or constructive knowledge that Dookhan had engaged in conduct that

violated Plaintiff's Constitutional rights.  Further absent from the Complaint are any factual allegations that any action or failure to act by Han was the proximate cause of the harm Plaintiff allegedly suffered.  Plaintiff does not plead facts sufficient to "nudge[]" his claims against Han "across the line from conceivable to plausible."  <u>Twombly</u>, 550 U.S. at 570.  As such, his Complaint "must be dismissed."  <u>Id.</u>

        1.    <u>The Complaint Fails To Allege Facts Sufficient To Show That Han Had Actual Knowledge Of Dookhan's Unconstitutional Conduct</u>

The Complaint suggests, but does not actually allege, that Han had actual knowledge of only *one* incident of alleged misconduct by Dookhan.  The Complaint alleges that unnamed "supervisors" learned in spring 2011 of an incident in which Dookhan had forged another chemist's signature on an evidence log book, inappropriately taken samples out of the evidence safe, and lied about it when asked.  Compl., ¶ 70.  This incident occurred well after the Lab tested the substance at issue in Complainant's criminal case, and after Complainant's conviction.

The Complaint then goes on to suggest, but does not directly allege, that Han had knowledge this "2011 breach."  The Complaint is vague as to whether Han was allegedly aware of this "2011 breach" by Dookhan at the time it occurred, or at some later time.  Compl., ¶¶ 73-74.  The Complaint makes no other factual allegations that Han had actual knowledge of any misconduct by Dookhan at any time relevant to the Complaint.

Even if the allegations in paragraphs 73 and 74 of the Complaint suffice to establish that that Han knew of the "2011 breach," that is not enough to sustain a claim of supervisor liability against Han.  Before Han can be held liable as a supervisor for her knowledge of this alleged misconduct by Dookhan, the Plaintiff must establish that Han had a "subjective belief" that there was a risk of harm resulting from this conduct.  <u>Snell v. Demello</u>, 44 F. Supp. 2d 386, 390-91 (D. Mass. 1999).  Here, the Complaint alleges the opposite.  The Complaint specifically alleges that

Han "believed" that this misconduct "'was simply a result of [Dookhan's] desire to reduce the backlog ... There was no question concerning any other motive.'" Id. at ¶ 73.  The Complaint further alleges that Han "did not appreciate its potential legal significance." Id. at ¶ 74.

Further, while the failure to respond to *repeated* complaints of constitutional violations may give rise to liability for a supervisor, a single alleged incident of misconduct, such as the alleged 2011 breach, will not support a claim that Han is liable for failing to take action against Dookhan.  See Rochleau, 115 F. Supp. 2d at 178 (single incident of misconduct will not support claim of failure to train or supervise).  The Complaint is also insufficient insofar as it fails to allege that Han had a responsibility to take action with respect to any alleged misconduct by Dookhan.  While Han is alleged to have been the Director of the Lab at all relevant times, but the Complaint contains no allegations that Han was responsible for the supervision of Dookhan.

2.   Plaintiff Has Failed To Plead Sufficient Facts To Show That Han Had Constructive Knowledge Of Dookhan's Unconstitutional Conduct

Having failed to plead facts sufficient to sustain a claim for supervisory liability based on actual knowledge, Plaintiff's claim against Han can only proceed if the Complaint alleges facts sufficient to allege that Han had constructive notice of behavior that was likely to result in a violation of Plaintiff's Constitutional rights.  Feliciano-Hernandez, 663 F.3d at 535 (actual or constructive knowledge required).  Constructive knowledge may be plead by factual allegations that the violations were so widespread or flagrant that an official, in the proper exercise of their responsibility, "should have known of them." Ramirez-Lluveras v. Pagan-Cruz, 833 F. Supp. 2d 165, 179 (D. P.R. 2011) (quoting Bordanaro v. McLeod, 871 F.2d 1151, 1157 (1st Cir. 1989) (internal quotation marks omitted).

The Complaint pleads no facts that plausibly support an argument that Han had constructive knowledge of Dookhan's misconduct, much less that it was likely to result in

Constitutional violations.  The underlying misconduct alleged is limited to Dookhan's actions. Only one incident, the "2011 breach" was reported to Han.  The insufficiency of that allegation, standing alone, to sustain Plaintiff's claim against Han is discussed above.

Other than the 2011 breach, the Complaint fails to allege any other facts that would support a finding that Han had constructive knowledge of misconduct by Dookhan.  There are no allegations that anyone reported Dookhan's misconduct to Han, or that Han was responsible for any level of supervision over Dookhan's work such that any failure by Han to notice Dookhan's misconduct can be characterized as "deliberate indifference."  At best, Plaintiff alleges that Han had knowledge of one incident, which Plaintiff concedes Han did not view as having any nefarious motive.  See Maldonado-Denis v. Castillo Rodriquez, 23 F.3d 576, 582 (1st Cir. 1994) ("isolated instances of unconstitutional activity are ordinarily are insufficient ... to show deliberate indifference").

Plaintiff has failed to plead any facts demonstrating that Han had constructive notice of Dookhan's unconstitutional conduct or that such conduct would arise.  Coupled with her lack of relevant or actionable actual notice, the claim against Han must be dismissed.

3.      Plaintiff Does Not Allege Fact Sufficient To Establish An "Affirmative Link" Between The Alleged Violation Of Plaintiff's Constitutional Rights And Any Conduct By Han

Even assuming that Plaintiff had sufficiently alleged that Han had actual or constructive knowledge of Dookhan's misconduct, which he has not, the supervisory liability claim still failed because the Complaint does not allege facts establishing an "affirmative link" between Plaintiff's Constitutional injury and any conduct by Han.

The Complaint contains no specific "causation" allegations.  Instead, in direct contrast to what is required post-Twombly and Iqbal, the Complaint makes only vague and conclusory allegations regarding the misconduct at the Lab and by Dookhan in particular.  A careful reading

of the Complaint reveals that Plaintiff *never* alleges that the alleged misconduct by Dookhan or the failure of the Lab to take action to identify and prevent such misconduct were the *cause* of the alleged Constitutional violations suffered by *Plaintiff*.  For this simple reason, the Complaint fails to state facts establishing the requisite "affirmative link" between Plaintiff's Constitutional injury and any conduct by Han.  See Hegarty v. Somerset County, 53 F.3d 1367, 1380 (1st Cir. 1995) ("affirmative link" requirement requires allegations that that the supervisor's conduct led to the Constitutional violation suffered by Plaintiff).

Here, there are simply no facts alleged that could establish a causal link between any of Han's actions or inactions and Plaintiff's alleged Constitutional injury.  At best, Plaintiff generally alleges that "the Defendants" collectively demonstrated "deliberate indifference" by "develop[ing] fatally flawed policies, procedures and protocols" and failing "to take basic precautions to ensure that the Lab was properly run."  Compl. ¶ 79.  These types of allegations are insufficient to establish a supervisory liability claim.  See Feliciano-Hernandez, 663 F.3d at 534 (rejecting similar allegations as the type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that the Supreme Court found insufficient to establish § 1983 supervisory liability).

Plaintiff has failed  to plead any facts to support an "affirmative link" between Han's actions or failure to act and Dookhan's acts that caused a violation of Plaintiff's Constitutional rights.  For this additional reason, Plaintiff's Complaint should be dismissed as to Han.

### C.      Plaintiff's Complaint Against Han Is Bared Because Han Is Entitled To Qualified Immunity.

In the alternative, this Court should dismiss the Complaint as to Han because she is entitled to qualified immunity.  This doctrine shields public officials like Han from liability for actions taken while performing discretionary duties unless their personal conduct violated

"clearly established statutory or constitutional rights of which a reasonable person would have known." Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 8 (1st Cir. 2013) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

The broad protective scope of qualified immunity is designed to reduce the societal costs imposed by litigation against government officials, reaching "all but the plainly incompetent or those who knowingly violate the law." Lopera v. Town Of Coventry, 640 F.3d 388, 396 (1st Cir. 2011) (quoting Morse v. Frederick, 551 U.S. 393, 429 (2007)) (internal quotation marks omitted). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009).

Equally important, the qualified immunity doctrine is designed to protect public officials from the burdens of litigation arising from the performance of their official duties. Iqbal, 556 U.S. at 678. As a result, whether a public official is entitled to qualified immunity should be resolved at the earliest possible stage in litigation. Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). Indeed, because immunity is "effectively lost if a case is erroneously permitted to go to trial," it is proper to consider the doctrine at the motion to dismiss stage. Rocket Learning, Inc., 715 F.3d at 8 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)); see also Feliciano-Hernandez, 663 F.3d at 529 (affirming the dismissal of supervisory liability claims against high-level government officials that contained similarly broad and conclusory notice allegations on qualified immunity grounds).

In order to overcome the doctrine of qualified immunity, a plaintiff must establish (1) the violation of a constitutional right, (2) that the constitutional right was clearly established at the

time of the alleged conduct, and (3) that an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right.  Wilson v. City of Boston, 421 F.3d 45, 52 (1st Cir. 2005).  Courts have discretion to approach the first two prongs of the qualified immunity test in any sequence.  Pearson, 555 U.S. at 232. If a court finds that a constitutional right was not clearly established, it may dismiss the complaint on qualified immunity grounds without deciding whether the complaint establishes a constitutional violation. Haley v. City of Boston, 657 F.3d 39, 47 (1st Cir. 2011).

Whether a constitutional right is "clearly established" is an objective test that "has two parts: (a) whether the legal contours of the right in question were sufficiently clear that a reasonable official would have understood that what he was doing violated that right, and (b) whether the particular factual violation in question would have been clear to a reasonable official." Diaz-Bigio v. Santini, 652 F.3d 45, 50 (1st Cir. 2011).

The pleading barrier is even greater where, as here, a plaintiff seeks to hold a supervisor liable for the alleged constitutional violations of her subordinate.  In such cases, a constitutional right is only clearly established "when (1) the subordinate's actions violated a clearly established constitutional right, and (2) it was clearly established that a supervisor would be liable for constitutional violations perpetrated by his subordinates in that context." Camilo–Robles v. Hoyos, 151 F.3d 1, 6 (1st Cir. 1988).  In other words, the relevant inquiry is not simply whether Dookhan's actions violated a constitutional right, but also whether it was "clearly established" that Han could held liable for that conduct under a supervisory liability theory.

To show that a right was "clearly established" as it pertains to the supervisor, a plaintiff must demonstrate that the relevant constitutional obligations, on a particularized level, were established by "cases of controlling authority in their jurisdiction at the time of the incident

which clearly established the rule on which they seek to rely ... [or] a consensus of cases of persuasive authority" such that a reasonable official in Han's position would know that her conduct was apparently unlawful. <u>Wilson v. Layne</u>, 526 U.S. 603, 617 (1999). "[I]f the operative legal principles are clearly established only at a level of generality so high that officials cannot fairly anticipate the legal consequences of specific actions, then the requisite notice is lacking." <u>Savard v. Rhode Island</u>, 338 F.3d 23, 28 (1st Cir. 2003) (citing <u>Anderson</u>, 483 U.S. at 640) (emphasis added).

As outlined above, Plaintiff's theory of liability as to Han requires the Court to ignore the requirements of notice, deliberate indifference, and causation.  There is no established authority suggesting that a supervisor who herself took no action that deprived the plaintiff of any Constitutional right and who had no actual or constructive notice of the underlying misconduct sufficient to require the supervisor to take action could nevertheless be held liable for the underlying Constitutional violations.  Even if the Court were willing to entertain Plaintiff's argument, the Complaint should be dismissed as to Han because it was not clearly established that such a theory was available to hold an official in Han's position liable for Dookhan's misconduct.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety against Linda Han, with prejudice.

Dated: August 21, 2013                    Respectfully submitted,


                                          LINDA HAN,

                                          By her attorneys,

                                          /s/ Sarah B. Herlihy
                                          Paul V. Kelly (BBO No. 267010)
                                          Email: paul.kelly@jacksonlewis.com
                                          Sarah B. Herlihy (BBO No. 640531)
                                          Email: sarah.herlihy@jacksonlewis.com
                                          JACKSON LEWIS LLP
                                          75 Park Plaza, 4th Floor
                                          Boston, MA  02116
                                          Tel: (617) 367-0025
                                          Fax: (617) 367-2155

## <u>CERTIFICATE OF SERVICE</u>

This hereby certifies that on this 21st day of August 2013, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Sarah B. Herlihy*
Sarah B. Herlihy

4837-3691-4453, v. 1